# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LEONARD JACKSON,

    *Plaintiff,*

vs.

CAROLYN W. COLVIN,[1] ACTING
COMMISSIONER OF SOCIAL SECURITY,

    *Defendant.*

Case No. 12-1118-EFM

## MEMORANDUM AND ORDER

Plaintiff Leonard Jackson seeks review of a final decision by the Commissioner of Social Security denying his application for disability and disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. Jackson claims that the Commissioner's decision should be reversed because the Administrative Law Judge ("ALJ") erred by assigning little weight to the treating physician's opinion and the third-party statement of Dana King, the mother of Jackson's children. Because the Court finds that the ALJ did not err in evaluating the medical opinions and third-party report, the Court orders that the decision of the Commissioner is affirmed.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I. Factual and Procedural Background

Jackson was 36 when he was in a car accident July 20, 2007, his alleged disability onset date. Jackson completed three years of college and had worked as a janitor and youth counselor. Jackson was not engaged in substantial gainful activity during the period of review.

In his applications for disability and supplemental security income, Jackson alleged that he was unable to work because of neck and back injuries and carpal tunnel in both hands. The agency denied Jackson's application initially and on reconsideration. Jackson then asked for a hearing before an administrative law judge.

At the administrative hearing in August 2009, Jackson testified about his medical conditions. A vocational expert also testified that Jackson could not perform his past work, but he could perform light work in existing jobs in the unskilled labor market. The ALJ's decision reflects that he considered reports from Jackson's treating physician, an independent medical examiner, the agency's examiner, and Dana King, who identified herself as the mother of Jackson's children. The ALJ denied Jackson's request for benefits.

The ALJ found that Jackson last engaged in substantial gainful activity on the alleged disability onset date. The ALJ also found that Jackson had the following severe impairments: "degenerative disk disease of the lumbar spine; mild spondylosis of the cervical spine; and a history of bilateral carpal tunnel syndrome." After finding that Jackson did not have an impairment equivalent to a listed impairment, the ALJ found that Jackson had the residual functioning capacity to perform light work. The ALJ found that Jackson was unable to perform any of his past relevant work, but a finding of "not disabled" was directed by the Medical-Vocational Rules. Based on Jackson's age, education, work experience, and residual functioning

capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that Jackson could perform.

The Social Security Administration's Appeals Council denied Jackson's request for review in January 2012. Because Jackson has exhausted all administrative remedies available to him, the Commissioner's decision denying Jackson's application for benefits is now final and this Court has jurisdiction to review the decision.

## II. Legal Standard

Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Upon review, the Court must determine whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standard.[2] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[3] The Court is not to reweigh the evidence or substitute its opinion for the ALJ.[4] The Court must examine the record as a whole, including whatever in the record detracts from the ALJ's findings, to determine if the ALJ's decision is supported by substantial evidence.[5] Evidence is not substantial if it is overwhelmed by other evidence or if it is a mere conclusion.[6]

---

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

[5] *Wall*, 561 F.3d at 1052 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[6] *Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)); *see also Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted, or can be expected to last, for a continuous period of 12 months and an inability to engage in any substantial gainful work existing in the national economy due to the impairment.[7] The ALJ uses a five-step sequential process to evaluate whether a claimant is disabled.[8] The claimant bears the burden during the first four steps.[9]

In steps one and two, the claimant must demonstrate that he is not presently engaged in substantial gainful activity and that he has a medically severe impairment or combination of impairments. "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits."[10] If, however, the claimant does not establish impairment at step three, the process continues. The ALJ assesses the claimant's residual functioning capacity, which is an assessment of what an individual can still do despite his or her limitations.[11] At step four, the claimant must demonstrate that his impairment prevents him from performing his past work.[12] The Commissioner has the burden at the fifth step to demonstrate that work exists in the national economy within the claimant's residual functioning capacity.[13] The residual functioning capacity assessment is used to evaluate the claim at both steps four and five.[14]

---

[7] 42 U.S.C. § 1382c(3)(A); *see also id.* § 423(d)(1)(A).

[8] 20 C.F.R. § 404.1520(a); *see also Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

[9] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[10] *Id.*

[11] Social Security Ruling 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

[12] *Lax,* 489 F.3d at 1084; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

[13] *Lax,* 489 F.3d at 1084; *see also* 20 C.F.R. § 416.920(a)(4)(v).

[14] *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v).

## III. Analysis

Jackson argues that the ALJ erred in giving little weight to his treating physician's opinion and erred by giving little weight to King's third-party statement. The Commissioner contends that the ALJ properly considered the medical opinion evidence and King's lay opinion evidence.

### A. Treating Physician's Opinion

Jackson argues that the ALJ erred by giving little weight to the opinion of his treating physician, Dr. Pedro Murati. Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons in the notice of decision for the weight assigned to a treating physician's opinion.[15] Generally, an ALJ should "give more weight to opinions from [claimant's] treating sources."[16]

When reviewing the medical opinion of a treating physician, an ALJ must engage in a two-step inquiry, each step of which is analytically distinct.[17] First, the ALJ must decide whether to afford the opinion controlling weight. If a treating source's opinion about the nature and severity of impairment is well-supported and is not inconsistent with the other substantial evidence in claimant's case record, the ALJ will give it controlling weight.[18] But if the opinion is deficient in support or consistency with other evidence, it is not to be given controlling weight.[19]

---

[15] 20 C.F.R. § 404.1527(d)(2); *see also* Social Security Ruling 96-2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

[16] 20 C.F.R. § 404.1527(d)(2).

[17] *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

[18] 20 C.F.R. § 404.1527(c)(2).

[19] *Krauser*, 638 F.3d at 1330.

But finding that the opinion is not entitled to controlling weight does not end the inquiry.[20] Such a finding does not mean that the opinion should be rejected.[21] Under the "treating physician rule," the Commissioner generally will give greater weight to the opinions of those who have treated the claimant than of those who have not.[22] A treating opinion is still entitled to deference even if it is not given controlling weight.[23] As a result, finding that a treating physician's opinion is deficient enough to be not given controlling weight only raises the question of how much weight to give the opinion, but it does not answer the question.[24]

In the second step, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned."[25] The factors to be considered are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[26]

---

[20] *Id*.

[21] *Id*. (quoting SSR 96-2p, 1996 WL 374188, at *4).

[22] *Hackett v. Barnhart*, 395 F.3d 1168, 1173-74 (10th Cir. 2005).

[23] *Id*.

[24] *Krauser*, 638 F.3d at 1330-31.

[25] *Id*. at 1330 (10th Cir. 2011) (internal citation omitted).

[26] 20 C.F.R. § 404.1527(c)(1)-(6); 20 C.F.R. § 416.927; *Krauser*, 638 F.3d at 1331.

Remand is required if this is not done.[27] This analysis must be "sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reason for that weight."[28] If a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around.[29] In other words, the ALJ's task is not to determine whether the treating physician's report outweighs the other physician's reports.

Jackson challenges the ALJ's finding that the opinion of Jackson's treating physician, Dr. Murati, was entitled to little weight compared to the opinions of other non-treating physicians. Specifically, Jackson argues that the ALJ failed to properly evaluate Dr. Murati's opinion under the applicable regulations and that the ALJ's findings are not supported by substantial evidence.

The ALJ concluded that Dr. Murati's opinion is not entitled to controlling weight because it is not well supported and is inconsistent with the record as a whole. In particular, the ALJ noted that Dr. Murati's opinion was not supported by his own records, explaining:

> Dr. Murati's office notes report the claimant's pain is adequately controlled by medication; that the claimant was in no acute distress when examined; and that the claimant reported no side effects from his medications (Exhibit 12F). This is inconsistent with Dr. Murati's opinion that the claimant can work less than four hours per day and that his medications cause drowsiness.

The ALJ also noted that Dr. Murati's opinion that Jackson was depressed was not supported by his own records. The opinion noted only that "all chronic pain patients have depression." The ALJ further noted that Dr. Murati's opinion was inconsistent with record as a whole, explaining:

---

[27] *Krauser*, 638 F.3d at 1330.

[28] *Id.* at 1331 (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004)).

[29] *Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

Furthermore, Dr. Murati's opinion that the claimant exhibited sensory and reflex loss in the upper and lower extremities is in direct conflict with the opinions of the consultative examiner Alan Cornett, D.O. and independent medical examiner Paul Stein, M.D., who both determined the claimant to have no significant sensory or reflex loss in the upper or lower extremities (Exhibits 4F & 7F). Dr. Murati also reported the claimant has right L5 radiculopathy, even though the claimant has consistently reported his pain radiates into the left thigh (Exhibits 4F & 12F).

Therefore, the ALJ sufficiently explained that Dr. Murati's opinion is not entitled to controlling weight because it was not well-supported or consistent with the record. The ALJ concluded, "The undersigned finds that there is simply no basis for finding the claimant as impaired in function as reported by Dr. Murati. Because Dr. Murati's opinion is not well supported and is inconsistent with the record as a whole, the undersigned has given it little weight."[30]

As noted earlier, an ALJ's decision must "provide good reasons that are sufficiently specific to permit meaningful judicial review."[31] An ALJ is not required to expressly apply all six of the relevant regulatory factors in deciding what weight to give a medical opinion because not every factor will apply in every case.[32] All that is required is that the ALJ provide good reasons in his decision for weight given to a treating source's opinion.[33] This Court's review must be based only on the reasons stated in the decision and not based on unstated reasons.[34] Apparent inconsistencies in one aspect of a treating physician's opinion do not provide a basis

---

[30] Doc. 9, Exh. 2 at 20.

[31] *Jones v. Colvin*, 514 Fed. Appx. 813, 818 (10th Cir. 2013).

[32] *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

[33] *Id*.

[34] *Jones*, 514 Fed. Appx. at 819.

for rejecting the entire opinion.[35] An ALJ errs by rejecting the opinion of a treating physician in favor of a nonexamining physician's opinion without a legally sufficient reason for doing so.[36]

Here, the ALJ's analysis of controlling weight and little weight are in the same paragraph with explanations of unsupported and inconsistent evidence. The ALJ also noted that Dr. Murati saw Jackson once every three months for medication checks since October 2007 and that he was familiar with Jackson. Under the regulations for determining how much weight to give a medical opinion, the ALJ also may consider the supportability of the opinion and its consistency with with the record as a whole.[37] These two factors overlap with the controlling-weight decision. As a result, an ALJ's reasons for declining to give controlling weight to a treating physician's opinion also may support giving the opinion diminished weight.[38]

The ALJ clearly stated that Dr. Murati's opinion was given "little weight" and set forth the reasons for assigning that weight—because the opinion was not well supported and was inconsistent with the record as a whole.[39] Further, the ALJ assigned the most probative weight to the opinions of Dr. Cornett and other State agency physicians and assigned significant weight to Dr. Stein's opinion. So the ALJ gave greater weight to those opinions than the little weight he assigned to Dr. Murati's opinion. The Commissioner concedes that the ALJ's decision could have been clearer, but the weight assignments demonstrate that the ALJ examined the other

---

[35] *Id.*

[36] *Id.*

[37] C.F.R. § 404.1527(c)(3)-(4).

[38] See *Payton v. Astrue*, 480 Fed. Appx. 465, 469 (10th Cir. 2012) (noting that treating physician's opinion lacked consistency with the record as a whole and was contracted by his own treatment notes); *Armijo v. Astrue*, 385 Fed. Appx. 789, 795-96 (10th Cir. 2010) (noting that supportability and consistency factors had significant bearing on ALJ's finding that treating physician's opinion was entitled to little weight).

[39] Doc. 9, Exh. 2 at 20.

physicians' reports and determined that they outweighed Dr. Murati's treating physician's report.[40] Therefore, the ALJ's decision meets the requirement that his analysis sufficiently state the weight assigned to the treating physician's opinion, the reasons for that weight, and the determination that the other physicians' reports outweigh the treating physician's report.

Jackson also questions whether substantial evidence supports the ALJ's factual findings related to Dr. Murati's opinion. An ALJ's findings may be supported by substantial evidence even if two inconsistent conclusions may be drawn from the evidence.[41] This Court may not displace the ALJ's choice between two fairly conflicting views.[42]

Here, there is substantial evidence to support the ALJ's findings. The ALJ gave specific and legitimate reasons for his findings, which are supported by the record. First, Dr. Murati's office notes from November 2008 reflect that medication was "adequately controlling his pain," that Jackson did not appear to be in acute distress, and that Jackson denied any side effects from his medication.[43] Second, the ALJ accurately noted that Dr. Murati's opinion indicated that Jackson had sensory loss and reflex loss in his upper and lower extremities.[44] The ALJ also accurately noted that reports by Dr. Stein and Dr. Cornett addressed sensory and reflex examinations of the lower and upper extremities and did not indicate any sensory or reflex loss.[45] As noted before, this Court may not displace the ALJ's choice between two fairly conflicting

---

[40] See *Goatcher*, 52 F.3d at 290.

[41] *Lax*, 489 F.3d at 1084.

[42] *Id*.

[43] Doc. 9, Exh. 9 at 368.

[44] Doc. 9, Exh. 9 at 371.

[45] Doc. 9, Exh. 8 at 318-19, 343.

views.⁴⁶ Third, Dr. Stein noted the discrepancy between Dr. Murati's report that indicated a right S1 radiculopathy and evidence that Jackson's symptoms were on the left.⁴⁷ The medical records support that Jackson's symptoms were in the left leg.⁴⁸ Fourth, a review of the record does not show any support for Dr. Murati's conclusion that Jackson's suffered from depression. Therefore, the Court finds that there is substantial evidence to support the ALJ's findings. The Court upholds the ALJ's decision on this issue.

**B. Third-Party Lay Opinion**

Jackson also asserts that the ALJ erred by granting the lay opinion of a third-party function report little weight. Specifically, Jackson contends that the ALJ disregarded Dana King's statement without the proper analysis and that it is entitled to some weight.

Here, the ALJ addressed King's report in one paragraph:

> The claimant's former girlfriend completed two third part[y] function reports (Exhibits 6E & 9E). The undersigned is able to give her opinion little weight as it is a lay opinion based on casual observation rather than objective medical evidence and testing. It is also based upon loyalties of friendship. It certainly does not outweigh the accumulated medical evidence regarding the extent to which the claimant's limitations can reasonably be considered a result of her determinable impairments.⁴⁹

Nearly identical language recently has been upheld by other district courts as proper.⁵⁰ In the Tenth Circuit, an ALJ is not required to make specific, written findings about each lay

---

⁴⁶ See *Lax*, 489 F.3d at 1084.

⁴⁷ Doc. 9, Exh. 8 at 317.

⁴⁸ Doc. 9, Exh. 8 at 305-06, 322, 334.

⁴⁹ Doc. 9, Exh. 2 at 21.

⁵⁰ See *Byers v. Colvin*, 2013 WL 5499836, at *4-5 (D. Kan. Oct. 3, 2013); *Croley v. Colvin*, 2013 WL 615564, at *8-10 (D. Kan. Feb. 19, 2013).

witness's opinion as long as the written decision reflects that the ALJ considered the testimony.[51] Judge Lungstrom summarized:

> Thus, the law in the Tenth Circuit is clear with regard to opinion testimony or statements from lay witnesses such as spouses, parents, friends, and neighbors. The decision must reflect that the ALJ included the opinion in his consideration of disability, but he need not specify the weight accorded to that opinion. Nonetheless, he *may* do so in explaining the rationale for his decision.[52]

Under this analysis, other courts have rejected arguments similar to Jackson's argument here, ruling that the language in the decision affirmatively shows that the ALJ considered the third-party statements.[53] This is all the ALJ was required to do under Tenth Circuit law.[54] The ALJ is not required to comment at all about a lay opinion as long as the decision affirmatively shows that the opinion was considered.[55]

Here, the ALJ's decision affirmatively acknowledges that King submitted two third-party function reports for consideration. The ALJ assigned King's opinion little weight because it was based on casual observation and friendship.[56] These are proper reasons.[57] The ALJ was not required to assign a weight to King's opinion at all, but even so, assigning little weight to a non-medical, non-professional source is consistent with the hierarchy of opinion evidence as reflected

---

[51] *Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2006); *Croley*, 2013 WL 615564, at *5.

[52] *Croley*, 2013 WL 615564, at *6.

[53] *Id.*; *Byers*, 2013 WL 5499836, at *5.

[54] *Byers*, 2013 WL 5499836, at *5.

[55] *Croley*, 2013 WL 615564, at *6.

[56] Doc. 9, Exh. 2 at 21.

[57] See *Croley*, 2013 WL 615564, at *6 ("These are precisely the two factors specifically recommended by SSR 06-03p for evaluating lay opinions: 'the nature and extent of the relationship,' and 'whether the evidence is consistent with other evidence.'").

in the regulations.[58] Therefore, Jackson's argument fails.[59] The Court upholds the ALJ's decision on this issue.

**IT IS ACCORDINGLY ORDERED** this 9th day of December, 2013, that the decision of the administrative law judge denying Jackson's claim for Social Security benefits is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[58] *See id.*, at *6-7 ("In general, the hierarchy of opinion evidence as reflected in the regulations, when listed from greater weight to lesser weight is: the opinion of a treating source, a non-treating source, a non-examining source, 'other' medical sources such as nurse-practitioners, 'non-medical sources' who have contact with the claimant in their professional capacity such as teachers and counselors, and finally, 'other' non-medical sources such as parents.").

[59] Jackson argues his case is similar to *King v. Astrue*, 2012 WL 1231836 (D. Kan. April 12, 2012), which remanded an ALJ decision that used similar language assigning little weight to a mother's opinion. The Court finds this case unpersuasive for the reasons outlined in *Croley*. See 2013 WL 615564, at *8-9 (explaining that *King* does not discuss relevant Tenth Circuit case law).